[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff's revised complaint is in two counts. The first count alleges that the plaintiff is a corporation in Newtown engaged in the development and construction of real estate and that the defendant was a registered land surveyor. On September 18, 1986, the plaintiff owned approximately fifteen (15) acres on Alberts Hill Road in Newtown. On that date, the parties entered into an agreement whereby the defendant would perform civil engineering, site planning and land surveying for the plaintiff on that property. The defendant was to subdivide two lots containing approximately four and one-half (4-1/2) acres and to prepare a subdivision application for submission to the planning and zoning commission for five lots out of the remaining eleven and one-half (11-1/2) acres. The defendant commenced these services on September 18, 1986. As of June 22, 1988, the defendant had failed to complete his services for the five (5) lot subdivision in that the defendant failed to provide adequate drainage as required by the town engineer and has not provided all of the necessary information on the maps for review by the town engineer. The plaintiff claims breach of contract and damages.
The second count repeats the general allegations of the first count and continues as follows: CT Page 1377
 The defendant's failure to complete the subdivision application was as result of his carelessness and negligence in that:
 (a) he failed to complete the services in a timely manner;
 (b) he failed to respond to the request of the Town Engineer;
 (c) he failed to submit a long form application to the Conservation Commission for the Town of Newtown;
 (d) he failed to complete all necessary revisions concerning the drainage on the subdivision;
 (e) he failed to inform the plaintiff on the date when the subdivision plans were ready for submission.
As a result of the defendant's negligence, the plaintiff has suffered damages.
The defendant denied the breach of contract and negligence claims and filed three special defenses as follows:
FIRST SPECIAL DEFENSE:
To the extent the plaintiff has suffered any losses or damages as alleged, those losses and damages were caused by the plaintiff's failure to perform its obligation pursuant to its contract with the defendant.
SECOND SPECIAL DEFENSE:
To the extent the plaintiff has suffered any losses or damages as alleged, those losses and damages were caused by the plaintiff's own negligent acts and omissions in the performance, operation and administration of its contractual obligations under the agreement with the defendant.
THIRD SPECIAL DEFENSE: CT Page 1378
To the extent the plaintiff has suffered any losses or damages as alleged, those losses and damages were caused by the plaintiff's own intentional acts and omissions in the performance, operation and administration of its obligations under the agreement with the defendant. The intentional acts of the plaintiff, its agents, servants or employees are as follows:
 (a) forbidding the defendant from directly communicating with officials of the Town of Newtown;
 (b) hiring third parties to supervise and interfere with the defendant's performance;
 (c) refusing to communicate with the defendant or to respond to the defendant's requests and questions, thus interfering with the defendant's ability to perform its contractual obligations;
 (d) obtaining from the defendant sets of plans for the alleged purpose of submission to the Town of Newtown, but failing to submit the plans as so represented.
The defendant counterclaimed as follows:
1. Defendant, Charles T. Galian, is a land surveyor duly registered with the State of Connecticut.
2. In September of 1986, Charles T. Galian agreed to perform certain civil engineering, site planning and land surveying services for the plaintiff, Williams Contractors and Developers Corporation, on certain real estate on Alberts Hill Road in Newtown, Connecticut.
3. The defendant, Charles T. Galian, substantially performed its services under the contract for services.
4. The plaintiff, Williams Contractors and Developers Corporation, has failed to pay Charles T. Galian all compensation due and owing to him with a balance of $3,944.89.
The following facts are found and conclusions reached by the court. Kevin Williams is the owner of the plaintiff and CT Page 1379 its principal operator. He is thirty-five (35) years of age and a very successful hard-driving land developer and residential builder in Newtown. At the time of trial, he had one hundred ten (110) people working on his various projects, principally through subcontractors. He has built over seventy (70) homes in Newtown, many of them luxury houses in a very distinctive neo-Victorian style. He drives himself very hard and expects equally effective results' from those he employs.
The defendant is forty-seven (47) years old and has suffered two heart attacks, including a second one which caused him to be hospitalized in late June and early July 1988. His demeanor in court was so belligerent that his counsel requested a recess after which he apologized to the court. His chip-on-the-shoulder attitude was particularly expressed during the trial by comments about the "bureaucrats" in the land use offices in Newtown who were thwarting his efforts on behalf of Williams. This approach could not have helped in the approval process in which he was involved. He was a registered land surveyor of some year's experience who had a total of three full-time land surveyors in his office in Monroe. He had done some other work for Williams before September 18, 1986 and was familiar with Newtown land use regulations from work done for others. He had brought other matters before the Conservation Commission and the Planning and Zoning Commission in Newtown.
On September 18, 1986, Kevin Williams contacted him about the overall handling of a proposed subdivision on Alberts Hill Road. It involved separating off one parcel with a residence on it and a lot across the road, totalling two and one-half (2-1/2) acres, and subdividing the remaining eleven and one-half (11-1/2) acres into five (5) building lots. This work was to include parameter and topographical maps, lot layout, necessary additional land to be added to the existing substandard Alberts Hill Road, septic and lot layout, and the like. It was to include necessary appearances before the land use authorities. The agreement was oral only. A ballpark figure of $16,000 was mentioned by him but the parties always understood that the work would be billed at an hourly rate, depending on the experience of those involved. For some time the work was done adequately and in a satisfactory manner and included the breaking off of the two and one-half (2-1/2) acres which were sold to Attorney DeLuca, and the preparation of the overall subdivision application for submission to the CT Page 1380 Conservation Commission, which is also the Inland Wetlands Commission in Newtown. Over the period of the parties' involvement, Williams paid without protest to Galian $22,160. The counterclaim claims $3,949.89 still due.
Galian completed the basic overall project in March, 1987 and, as is customary, took the matter up with the staff of the Conservation Commission to iron out any difficulties. There was considerable discussion about inadequate hay-baling in certain areas concerning which Galian was somewhat uncooperative. Matters with the Commission and between the parties continued without any unusual occurrence until December 21, 1987 when the town sent Galian a letter, plaintiff's Exhibit D as follows:
December 21, 1987
 Charles Galian 171 Hammertown Rd. Monroe, CT 06468
Dear Mr. Galian:
 Re: Echo Valley Properties, Alberts Hill Rd., Newtown.
 A preliminary review of soil test information and maps prepared by your office, dated revised December 6, 1987, has been completed for the above referenced proposal. Please note the following comments:
 1. Section 2.04.03 of the Newtown Local Ordinance states that no portion of any sewage disposal system shall be located within 100 feet of any watercourse. Lot 2 does not apply with this requirement.
 2. Feasible septic tank locations must be shown on the plan.
 3. Feasible oil tank locations should be shown on the plan or a note placed on the record subdivision plan requiring all oil tanks to be installed inside the buildings. CT Page 1381
 4. Lot 5 may need a pump for the primary and/or reserve. This should be noted on the plan and the pump chamber shown.
 5. The driveway drainage pipes under driveway for Lots 4 and 6 are too close to the proposed primary areas.
 All lots do not meet minimum Public Health Code and/or subdivision requirements as noted above. Therefore a recommendation for approval cannot be given.
 A preliminary review should not be misconstrued as being a final check for compliance to codes. Additional comments and suggested changes may result in future evaluations.
 If you have any questions or comments concerning this review, please feel free to contact my office.
Very truly yours,
 Dawn Ford Assistant Sanitarian DF/MC:lw
Items 2 through 4 were not serious objections. Items 1 and 5 could prove to be serious obstacles to approval, but Galian took steps to comply with these comments. From March 1987, he felt obligated, though grudgingly, to make adjustments and corrections requested by the conservation people.
Plaintiff's Exhibit A, Minutes of the Conservation Commission, reveal the course of the short form application that Galian submitted to the Commission as follows:
1. File 88-3 shows a new application on February 10, 1988 by Galian for Echo Hill Properties, Alberts Hill Road short form application to construct five single family homes. The application was found incomplete for various routine reasons. CT Page 1382
2. At the February 24, 1988 meeting, the chairman reported that information was requested from the applicant; no new information having been received, no action could be taken at this time.
3. At the meeting of March 9, 1988, application still found incomplete.
4. At meeting of March 23, 1988, same situation.
5. Meeting of April 13, 1988 still haven't received all information so no action.
James Benson, now with the New York City Department of Environmental Protection was employed by Newtown from August, 1979 to December, 1988. In 1987, he was named conservation director. His duties included the administration of inland wetlands and watercourses regulations and the impact of proposed subdivisions on wetlands. He reviewed the applications involved in this case. On March 3, 1988, Ronald E. Balmer, town engineer, wrote Benson concerning File 88-3 that he had reviewed the subject application and found that no drainage analysis map had been provided. He stated that he needed this to complete his review (plaintiff's Exhibit E) on March 14, 1988. Benson wrote Galian as follows:
March 14, 1988
 Mr. Charles Galian 171 Hammertown Road Monroe, Connecticut 06468
 Re: File #88-3, Charles Galian, Echo Valley Properties, Alberts Hill Road, Newtown, CT, Map #24, Block #5, Lot #4.
Dear Mr. Galian:
 At the March 9, 1988 meeting of the Conservation Commission it was agreed by a vote of 6 to 0 that in accordance with Section 5 of the Inland Wetlands and Watercourses Regulations of the Town of Newtown, your application as submitted cannot be accepted as complete at this time. The CT Page 1383 following information is required before the Commission can take any action:
 1. The applicant must respond to the issues raised by the Town Engineer's letter dated March 3, 1988, copy enclosed.
 2. The applicant must respond to the issues raised by the Health Department's letter dated March 4, 1988, copy enclosed. [Not in evidence; presumably refers to earlier letter outlining 5 areas of concern that had to be addressed.]
Very truly yours,
James D. Benson JDB/sap Conservation Director
On June 30, 1988, the following letter was sent to Galian from Benson:
June 30, 1988
 Mr. Charles Galian Williams Contractors Dev. Corp. Cold Spring Road Newtown, CT 06470
 Re: File #88-3, Charles Galian, Echo Valley Properties, Alberts Hill Road, Newtown, CT Map #24, Block #5, Lot #4.
Dear Mr. Galian:
 At the June 22, 1988 meeting of the Conservation Commission, your application filed on January 27, 1988 for a license to conduct Regulated Activities was accepted as complete by a vote of 5 to 0, in accordance with Section 5.3 of the Wetlands and Watercourses Regulations of the Town of Newtown. The application includes map entitled: CT Page 1384
 [Technical description of application omitted.]
 It was further agreed by a vote of 5 to 0, pursuant to Section 6 of the Wetlands and Watercourses Regulations of the Town of Newtown, to deny without prejudice your application to conduct Regulated Activities in the Town of Newtown.
 The application was denied based on the potential for impact on the intermittent watercourse.
 You may submit a long form application under Section 5.5 of the Regulations.
Very truly yours,
 James D. Benson Conservation Director
 JDB/ap Certified P-278 023 073
This denial was done to comply with the sixty-five (65) day rule and did not close the door completely.
The principal bone of contention between the applicant and the Commission was Benson's claim that an intermittent watercourse was not shown on the plans and would have to be provided for. Williams and Galian claimed it was only a slightly indented dry swale and required no action. Galian hired a soil scientist, Indorf, who backed up this contention. Benson's advisor, David Thompson (of whom more later), insisted that it was a watercourse. Galian resisted this claim strenuously but was finally forced on Williams' behalf to accept the proposition and make numerous and expensive changes in the maps and plans.
Two roadblocks to approval emerged in this case. Williams claims that because Galian was so slow and uncooperative about complying with various items raised by the Commission, this gave the Commission the time and impetus to come up with the intermittent watercourse issue. This claim CT Page 1385 flies in the face of Benson's testimony that he was right on top of this problem beginning in March, 1987 when the completed plans were first discussed with Commission staff members. Later, in what appears to be more of a hassle and less of a major problem, there was a standoff between Galian's engineer and Bulmer, the town engineer, over the capacity and design of the piping necessary to carry the water expected to run in areas in the watercourse crossed by driveways or otherwise covered over. As an incident to this dispute, Galian "sounded off" to Bulmer which, of course, didn't improve the situation. The town's view eventually prevailed here also.
The Bard has said, "ay, there's the rub."[1] The course of application 88-3 illustrates the fundamental schism between the approach of the go-go developer and the prickly surveyor he chose to represent his interests before the Conservation Commission. Williams sees the big picture; he deals with multimillion dollar projects where the essential thing is to get the regulatory approvals and get on with the project before interest costs and changing market conditions eat him alive. His approach is "to get along, go along." He thus has an excellent relationship with the Newtown regulatory agencies who undoubtedly find him a cooperative and responsible builder. The court noted in Plaintiff's Exhibit D, the minutes of the Conservation Commission, that he had another application pending before the Commission while the instant one was being considered.
Galian honed his misanthropic view of life in on the "bureaucrats" whom he felt were unfairly impeding approval of the project he was working on. His oral contact with Williams didn't warrant that he was "Mr. Congeniality." Perhaps he should never have been chosen to handle such a delicate matter before a Commission characterized as foot draggers by Thompson.
As matters dragged on in the spring of 1988, Williams lost faith in Galian. He felt that he was not living up to his contract and that he was negligent in the ways listed in count 2 of the complaint. Relations between Williams and Galian went from frosty to hostile. At the time of the June 30, 1988 denial, Galian was in the hospital after a heart attack. For four months in 1988, until Williams fired Galian in the fall, he would not take Galian's phone calls or call CT Page 1386 him back.
On September 12, 1988, David Bjorklund, Jr., PE, on behalf of Spath-Bjorklund Associates Inc. of Monroe, wrote to Galian telling him they had been approached by Williams to prepare plans for a subdivision on Alberts Hill Road on which Galian had already done some work. Bjorklund's letter was friendly and respectful of Galian's position in the matter. He stated that if Galian objected to his firm working on the project, he should say so. (Defendant's Exhibit 4.) Galian did not object. Anew application relying entirely, so far as is known to the court, on Galian's work, was submitted on December 6, 1989, and approved on January 10, 1990.
The following conclusions, dispositive of the case, have been reached by the court after careful consideration of all of the evidence:
Galian's attitude toward the regulatory authorities contributed to some small degree to the delay in approval of the application.
Galian completed the required underlying work satisfactorily. This conclusion is buttressed by the fact that Williams, a large and sophisticated developer, paid over $22,000 for the work as billed without objection; by the noncataclysmic nature of the Commission's objections to this application; by the eventual approval of the plan based on Galian's work; and by the fact that Williams only paid Spath-Bjorklund $1,040.80 for its work on the application. (Complaint, count 1, para 8; second count para 9.)
The key to the court's decision in this case is the astonishingly candid testimony of David Thompson. Thompson was Fairfield County District Conservationist for the U.S. Department of Agriculture, Soil Conservation Service. He was in soil conservation work for thirty-three (33) years. He was also an adviser to the Newtown Conservation Commission. He was better qualified than Benson on soil and wetlands matters. In December, 1988, he replaced Benson as environmental official for Newtown, a position which he still holds. He was put on the stand by the defendant to produce some records (although Attorney Bruno referred to the records as being those of the Environmental Commission from February 10, 1988 through June 22, 1988, they were minutes of the Conservation CT Page 1387 Commission as put in evidence).
He had examined the Alberts Hill property mainly to determine if the purposed application might have any impact on wetlands. He was familiar with the way in which the Conservation Commission worked and specifically with its handling of the Williams' application.
The transcript records the following explosive and overwhelmingly persuasive testimony (TR July 13, 1993, pp 17-19)!
MR. FERRIS:
 Q. And, were you aware of how the Conservation Commission or the approach that the Conservation Commission took towards new developments in the town of Newtown in 1988?
A. Yes, sir.
Q. Can you describe that for His Honor, please?
 A. Well, I don't — the only thing I can say is that the developers interest went up to first priority. [Court note: This appears to be inaccurate in the context of the total remarks.]
 Q. What was the first priority of the town of Newtown?
A. Preservation of wetlands . . . .
THE COURT: . . . .
 Aware of Newtown's attitude towards developers. You want to give me that again, please, the answer. The answer is?
 THE WITNESS: I was speaking specifically of the Conservation Commission, but the — their priority was not to satisfy the builders interest.
 THE COURT: Well that — that's a better way than you put it the first time. I think you said — CT Page 1388
 THE WITNESS: It's exactly what I said the first time —
 THE COURT: Well you said it more generally. Priority not to look out for developers interest, right?
THE WITNESS. That is correct, sir.
THE COURT: What was their priority?
THE WITNESS: The preservation of wetlands.
BY MR. FERRIS:
 Q. Mr. Thompson, were you aware in 1988, of an attitude or approach on the part of the Wetlands Commission to try and limit or restrict development within the town of Newtown?
 A. That might have been a personal opinion, I don't think I could nail it down specifically. But that was my opinion, yes.
Q. All right.
 THE COURT: Well, you didn't give your opinion. What is your opinion?
THE WITNESS: Excuse me?
 THE COURT: You said it's your personal opinion, but I didn't hear what your opinion is. Were you aware of an attitude of the Conservation Commission towards developers? They want to slow it down, they want to give them a hard time, what — in your own words?
 THE WITNESS: They tried to extend the process as long as they possibly could before granting any approvals. (Emphasis added.)
 From this startling testimony, the conclusion is inescapable that Galian did not substantially cause the delays CT Page 1389 or denial of the application, but rather they were mostly due to the mind-set of the Conservation Commission and its staff.[2]
Williams, who has successfully worked with the Commission in the past and plans to in the future, could not very well vent his wrath against the Commission. He gets along fine with the land use regulatory agencies. So he turned his wrath on Galian, bringing this suit on December 15, 1988.
The court concludes that although Galian was very aggravating to Williams and contributed in minor ways to the delay and denial of the application, the principal cause of the delay and resultant denial was mostly due to the attitude and actions of the Conservation Commission over which Galian had no control.
To be fair to the members of the Conservation Commission, mention should be made of the difficult task they face in the gray area of protecting wetlands. They serve without pay striving to protect the environment from developers eager to get the bulldozers in as soon as possible.
The plaintiff has failed to prove by a fair preponderance of the evidence the allegations of either the first count or the second count of the complaint. Judgment for the plaintiff on the special defenses. Judgment for the defendant on the complaint.
In the counterclaim, the defendant claims that he is due $3,944.89 for the unpaid services in connection with this project. Williams claims he was only billed this amount after he informed Galian that he was terminated. This raises the question as to whether this is a legitimate claim for services rendered or a retaliatory afterthought.
After careful consideration of all relevant evidence, the court concludes that it is reasonable and a legitimate bill for necessary work in connection with the Alberts Hill project.
Judgment for the defendant on the counterclaim in the amount of $3,944.89.
T. Clark Hull State Trial Referee CT Page 1390